Our fifth case for today is United States v. Lewis. Mr. Jones, no relation, I assume, to the previous case. No relation to the last. No. Happens a lot, though. May it please the Court, my name is Bill Jones, I'm from Madison, I represent the appellant Lisa Lewis. I wanted to bring up the waiver issue first that the government has asserted. Ms. Lewis was returning for resentencing pursuant to Thompson. And as I see it, that return meant that she was returning not just to adjust her supervision conditions, but also what was in play was the Court's ability to sentence her to whatever incarceration that it felt. And because that was in play, her rights and her bargain for benefit from the plea agreement was still in play. And so, as I see it, the PSR, the sentencing memo, and the argument that wasn't part of the record was going to be considered at that resentencing when determining whether or not she should be, how long she should be incarcerated. And so, I filed a motion, I guess I would couch it as kind of anticipating a breach of the plea agreement because I knew that they were going to be making the same argument, the same record was there, the same PSR was there, proposing that a different judge sentence Ms. Lewis because he was about to hear the same argument that I felt was in breach. Let me ask you this. There's been confusion, and our Court is partly responsible for this, you know, in terms of these full remands for resentencing after there's been a supervised release problem. But even if we thought that this slate was completely clean, she could raise this again, what good does that do you? The government continues to recommend 10 years. Defense counsel has said that the government is staying within the boundaries of the plea agreement. The government doesn't have to be enthusiastic about 10 years. It seems to me they're entitled to answer other questions. But, you know, why does it help you to get to the merits? Well, it helps because I think then we get to a de novo review of the, and I do listen when people say don't block court because oftentimes people will glance over them, but I think there's no other way to present it in that these are some pretty incendiary comments that are certainly not, I don't think you can reasonably read these and conclude that the government was making a good faith effort to hold up its end of the bargain for a 10 year sentence. I don't see how you reach that conclusion. You've got a defendant with some significant mitigating factors, certainly no criminal record that I recall, no record of violence. As in many white collar cases, you've got plenty of mitigation arguments that can be made that the defense is making vigorously and the government's entitled to support its recommendation, right? It is, it is, if it's doing so in good faith. Well, 10 years isn't exactly short. I mean, the government is sticking with the 10 years, which is what they promised to recommend. This was one of those plea agreements that leaves the ultimate choice of sentence up to the court. That's the typical kind. But the government is certainly saying, you know, I don't think a minute less than 10 years is appropriate because this was a terribly predatory scheme that this woman engaged in. Sure, I can appreciate that. But what you're proposing, if I'm understanding this right, is that the government is free to argue as aggressively as they wish, as long as they end it with, but 10 years is what I'm recommending. In the plea agreement, they reserved the right to provide the district court with any and all information that might be pertinent to sentencing. Well, right, and I responded to that in that respect, in that they also have other obligations that are more specific in the plea agreement to, you know, keep its recommendation to 10 years. Well, they did recommend 10 years. Well, and that's what I'm saying. If this court is saying… So it's a wink and a nod, 10 years? This is contract law, right? I think the case law says that the rules of contract apply. There's an implied requirement of good faith, and I don't think that a de novo review of the comments made, anyone could conclude that this is anything other than an argument for the maximum sentence, and then say, but 10 years. There are comments in here that say that people have been ruined for life. They're forever shattered. These are all opinions. They're all true, actually. Well, that's an opinion. You can't say that's true. That's not a fact. That is an opinion. It reported accurately some of the victim statements. I'll put it that way. Sure. And… Particularly when they're in the 90s and the 70s and 80s. Life is not very, the end of life is not very far away. All right. So what you're saying is that given their older age, when they say we're forever shattered, that means they're predicting that they won't be alive much longer, and therefore that… No, but if they're alive, you said that how do they know that it's going to be forever shattered? They're not going to be, statistically, they're not going to live forever. Correct. Correct. So where in the plea agreement does it oblige the government actually to advocate for 10 years as opposed to say that's our recommendation? The, the, the, there is no way that it says I will advocate for 10 years, but I think that… No, I mean, because it seems to me like what you really think should have happened is the government should have gotten up there and said more or less what Judge Hamilton just said. You know, well, on the one hand, here are mitigating factors. On the other hand, here are bad factors. We think the best balance is 10 years. Instead, they just say our recommendation is 10 years, and by the way, this is a pretty awful person. Right. And again, I'm relying on the constructs of contract law, which I think apply in a plea agreement, in that it has to be in good faith. I've been in front of lots and lots of sentences where there's a joint recommendation, and I have felt that the other side was saying, but here's the other side, and this is why I'm not recommending that, you know, you go 20 years. Or, you know, this is why I temper it to a point where it's 10. Admittedly, there's a lot of bad things, but there's none of that discussion. So I think that a review of this record suggests that this was an advocate for a very severe sentence, and it was outside of the recommendation, or the agreement in the plea agreement. I don't think Ms. Lewis got the benefit of her bargain in that respect. There's also the discussion I have in there as it relates to enhancers that weren't anticipated by the government in the plea agreement, and then when asked, I think that's advocacy. When you say, yeah, I think that applies, that's basically saying I think that should apply. There were other ways to handle that that could say, well, I can't, you know, I don't take a position on it or something like that, but instead it was an advocate, someone advocating for enhancers in a guideline that the deal was the deal. And I don't think that she got the entire deal that she had asked for, and I think it did have devastating consequences. So the deal didn't include forcing the judge to do anything. That's true. You let the judge make the decision. He did. That's true. I think I said a case in here, though, that we don't have to really conclude whether or not that impacted the judge or not. So my opinion on whether it had a major impact or not is not as important as the fact that they had a deal, and I think that the record indicates that the government didn't stick to it. Okay. You can save the rest. Yes, for rebuttal. Thank you. Mr. Roach. May it please the Court? William Roach on behalf of the government. I was the prosecutor in this case before Judge Griesbach, the district court judge. The government honored its agreement in this case. The plea agreement called for a 10-year maximum sentence, or a 10-year sentence. Maximum here was 20 years. 10-year sentence, and I argued for a 10-year sentence. I made clear at the plea agreement we would be arguing for a 10-year sentence. In my sentencing memo, I repeatedly stated the government is asking for 10 years. No doubt I pointed out the aggravating circumstances in this case. I'm compelled to do so as a prosecutor. That's part of my responsibilities is, of course, candor with the court and relaying the facts, the aggravated circumstances. The defense often solely focuses on the mitigating circumstances. In this case as well, I addressed a mitigating circumstance or two from Mrs. Lewis's perspective. I referenced the fact that she disclosed certain properties. So it wasn't all hammer-on. Mrs. Lewis had sentencing as the defense portrays. No doubt strong advocacy was used. After all was said and done, wasn't the 10-year period, there's a guideline range that gets calculated where the 10-year period is actually at the bottom of the guideline range, and then there was another guideline range that people were playing around with where it was the top. Yes, Judge. Where did you end up? The plea agreement was the 97 to 121 range. Right. The judge ended up ultimately finding the guideline at 121 to 151. 151, yeah. Exactly. He said it's at the bottom of the range that he found. It was at the bottom of his range. It would have been at the top of the range that the government had in the plea agreement. But, again, the government's – Counsel, excuse me. Yes. I thought the sentence was 15 years. It was a 15-year sentence.  This was not a guideline sentence. This was an above-guideline sentence. The judge made very clear, in essence, guidelines or no guidelines, that's the appropriate sentence here. Right. Precisely. And that addresses my second argument. Even if there was a breach in this case, it's incumbent upon Lewis to demonstrate that she was prejudiced, that the judge was somehow affected by this. If you look at the judge's sentencing one transcript, where really the breach they're claiming occurred, they're not necessarily claiming as much that it occurred at the second sentencing in the comments, at least, made to the court. But at sentencing one, what you'll see is that the judge was not necessarily persuaded by what the government was arguing in this case, but the judge immediately, when it started pronouncing sentencing, its sentencing comments referred to a victim impact statement, quoted for almost four pages, five pages, from this victim impact statement. Again, nothing the government presented, but something that a victim said. And the judge's sentencing comments really focused on a theme that was raised in a victim impact statement, lack of conscience of the defendant. And that was replete through the judge's sentencing comment, something, again, that the government didn't raise. So I think Lewis can't show that the judge was so persuaded by the government's argument, if its theme throughout is something raised by a victim impact statement. Second point that is of significance to Judge Griesbach, was significant to Judge Griesbach, was the lack of remorse. Government didn't argue that Lewis lacked remorse. The judge found that. Again, another factor in sentencing that shows she wasn't prejudiced by the government's argument. So if you look through the judge's arguments, as Judge Hamilton said, there were a lot of matters that were raised by the... I've got to say this, George. I understand what you're saying, but if there were a breach, it would be very hard to treat that as something that we would simply overlook, no matter what the judge said. It's difficult to show a breach, given the way the agreement was set up, given the arguments that were made. But I would frankly have some real trouble saying the government breached its agreement, but no harm, no foul on this kind of a situation. The case law indicates that if there's a breach, the next layer is, is it a substantial breach? Is it something that's substantial, something that's material, something that's technical? And the case law really requires that breach be raised before the district court when it's occurring. That didn't occur here. So the government contends there's waiver. But getting more so to your point, the next layer then that the case law indicates is really a harmless error analysis. Because when it's not timely raised, this court has said we look to the record for plain error. We look back to whether that, whether those comments truly prejudiced the defendant, Lewis in this case. So it can find that there was a breach, but that it didn't, the defendant didn't suffer prejudice as a result. So I think I've addressed the arguments that the government contends this record doesn't support a breach. And certainly if there was a breach, it was not a substantial breach, was cured, especially in the arguments made as far as the sentencing guidelines when you have the attorney saying that the government's acting appropriately here and can state the law, state the facts to the judge without violating the plea agreement. And then lastly, as you've read in the brief, the government contends that there are sound waiver issues that apply here for the defendant's failure to raise this not only before the trial court, but on the first appeal. This case was then remanded solely on the issue of supervised release conditions. Nothing remotely related. They negated the sentence, I think. There needed to be a new sentence imposed. Yes. Right. And the plea agreement obligation still applied through the second sentencing, of course. They did. And the government honored those. Thank you. Absent any other questions, appreciate your attention. All right. Thank you very much. Anything further, Mr. Jones? Yeah, I had a chance to take a look at my brief. I thought there was something as it relates to what was raised that, you know, the government needed to make a real strong argument because of these mitigating factors. But I did point out in the brief that as it relates to the government's position on those mitigating factors, one they responded on, this is page 13 of the brief, that her claim that she had been in an abusive relationship during this time, the government said it strikes me candidly as an excuse instead of taking personal responsibility. Well, I did this because Mr. Presley was putting pressure on me to do this. Convenient excuse, I guess, is how I deem it. And then the government went on to say there's plenty of defendants that you've sentenced that have long rap sheets that have been in and out of court before, and they should know better, but yet keep committing crimes. Ms. Lewis is one of those, is not one of those, but does that mitigate the offense? I would argue it really doesn't mitigate the offense. In other words, they went on and said because she has no criminal record, that actually is an aggravating factor. Every single chance that there was for the government to argue for a maximum sentence was being put forth in front of the judge. And then to end and say, but I recommend 10, is not holding up the end of the bargain. It's not good faith presentation of the argument. And that's all I have. Thank you very much. We appreciate your argument that the state, the government, I mean, will take the case under advisement.